STARK v. HOPSON.

1. An order of the Circuit Court reversing a decree of the Probate Court, which dismissed a petition in dower for want of evidence to prove the husband's seizin, and remanding the case to the lower court for a new trial, is appealable; but the better practice is to except to the Circuit decree, and await the final judgment before appealing.

2. A widow, claiming dower in a vacant lot, testified that her husband had owned it, and been possessed of it, claiming it as his own, during coverture; but had never lived on it, or had a tenant on it, or cultivated or enclosed it. There was also proof that this land had been devised by a testator to the children of his niece, "Sarah Stark," and while the proof was, that the mother of demandant's husband was named "Mary Stark," it was shown that this testator never had a niece named "Sarah Stark," and demandant testified that her husband had purchased the interests of his brothers and sisters in this lot. *Held,* that there was sufficient *prima facie* evidence of seizin in the husband.

Before KERSHAW, J., Richland, April, 1888.

This case has been once before in this court on appeal. See 22 *S. C.*, 42. The question here was whether the evidence was sufficient to make out a *prima facie* case of seizin in demandant's husband. The testimony is given in full.

Mrs. Eliza Stark, the demandant, being examined by commission in her own behalf, testified as follows:

My name is Eliza C. Stark, and I reside at Waco, Texas; I am the petitioner in this proceeding. I was married to Theodore Stark on April 14, 1835. He is not living; he died in Columbia, S. C., on August 2, 1882. I resided in Columbia, S. C.,

from my marriage until my husband's death. My husband's father was Robert Stark, who was married three times. My husband's mother was named Mary S. Hay. She had other children—Martha, Mary, Emma, Sally, Harriet, and Thomas. If there were any others, I never knew them. Sallie Stark married John H. Means; both she and her husband are dead; they left one child, Stark Means, who is also dead. Harriet Stark married Alexander Glennie; they are both dead, and left no children. Thomas Stark married Caroline Raoul; they are dead. At the time of his death, there were three children, Robert, Caroline, and Louis, of whom Louis alone is living; the others dead. The other children of Robert Stark and Mary S. Stark died without issue; were never married. My husband out-lived them all. I know the lot of land in the city of Columbia, S. C., bounded by Taylor, Hardin, Blanding, and Laurens streets, and containing four acres, more or less. My husband owned, and was in possession of, the said lot during the time I was married to him, and claimed to be the owner of said lot. I refer to the period shortly after my marriage, at which time my husband bought the interest of the other heirs in the lot up to the time he sold it. I do not remember the exact time of his purchase from the other heirs, but it was not long after our marriage, nor can I now state the date when he sold it. He sold it to Mr. Black; I presume the records will show the exact date. The reputed owners of the lot at the time of my marriage were my husband, Theodore Stark, and his three maiden sisters, Emma, Mary, and Martha Stark. I never heard the title of my husband disputed by any one. His title was admitted in the family, and there was never any question or dispute about it. I only know by common repute that this lot was willed to my husband and others by their relative, Mr. Taylor; I know of my own knowledge that he bought the interests of the other parties. I got my information as to the ownership from common and undisputed statements in the family and in the community at large, and from the statements of Emma, Mary, and Martha Stark, that they had sold their interests to my husband, and these statements and his claim to the land were never disputed by any one. I know of nothing further to state about the matter.

X. My husband never lived on said lot during the time I was married to him; there was no house on the lot at that time. He never had a tenant on said lot during that time. He never cultivated said lot during that time. He never enclosed said lot with a fence during that time. All the answers to the foregoing cross interrogatories are of my own knowledge.

Alex. R. Taylor testified in behalf of plaintiff: I knew the family of Col. Robt. Stark: himself, his wife, and all his children; I knew them well; his wife was my father's first cousin; she was called Mary, and her maiden name was Hay, or Hays. I do not remember her middle name. I knew all her children intimately—Martha, Theodore, Mary, James, who died young; Thomas, Emma, Harriet, who married in the low country, and Sally, who married Gov. Means, all are now dead. This is the only cousin of my father that married a Stark, except Grace, another cousin, who married Mr. Stark late in life, and died without children. I knew the land in dispute, upon which the Hopson house stands, on East Boundary street, bounded by Taylor, Hardin, Blanding, and Laurens streets. When I was a boy, it belonged to my grandfather, Thomas Taylor, who died about 1835; he may have died previous. I cannot remember about what time this land in question passed out of the possession of Col. Thomas Taylor. Col. Thomas Taylor and his wife were specially fond of Mrs. Stark and her family; they were constantly in their house. I do not remember who owned the land after the Taylors. I am pretty sure that my grandfather owned this land up to about the time of his death; I am almost certain of it. My father, John Taylor, was a son of Col. Thomas Taylor.

Extract from the will of Col. Thomas Taylor, filed 14th December, 1833: "I devise and bequeath to the children of my niece, Sarah Stark, deceased, a square of land in Columbia, bounded north by Walnut[1] street, east by Hardin street, west by Taylor street, and south by Laurens street."

The decree of the Circuit Judge was as follows:

[1] After the date of this will, the name of Walnut street was changed to Blanding.

The petitioner had filed her petition in the Probate Court for dower in certain land held by the respondent, and upon the hearing in that court the petition was dismissed September 6, 1887, at the close of petitioner's testimony, upon the ground that she had not shown seizin in her husband during coverture. From this judgment the petitioner appeals to this court. Upon the hearing before me, all the appellant's exceptions were waived, except exceptions No. 2 to No. 5, inclusive, which raise the question, whether there was sufficient evidence before the Probate Court to make out a *prima facie* case of seizin in demandant's husband during coverture, so as to require respondent to introduce his evidence in defence, if he has any.

After reading and considering the evidence which was before the Probate Court, and after argument by counsel for petitioner and for respondent, I think there was sufficient evidence before the Probate Court to establish a *prima facie* case of seizin in Theodore Stark during his intermarriage with petitioner to entitle the latter to dower in the land in question, unless rebutted by respondent's evidence. And the judge of probate should have required the respondent to offer testimony in defence, if he had any, and should not have dismissed the petition at the close of petitioner's testimony. These exceptions are therefore sustained.

The judgment of the Probate Court is reversed. and the case remanded to the Probate Court in order that respondent may introduce his evidence in defence, if he have any, and for such other proceedings as may be proper, and it is so ordered and adjudged.

Defendant appealed.

*Messrs. Clark & Muller*, for appellant.

*Messrs. A. C. Moore* and *J. T. Rhett*, contra.

March 18, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. The demandant filed her petition in the Court of Probate for the County of Richland, claiming dower in a certain lot of land in the city of Columbia, of which the

defendant is in possession. After hearing the evidence adduced by the demandant, the judge of probate rendered his decree, dismissing the petition upon the ground that the demandant had failed to show seizin in her deceased husband during the coverture. From this decree, demandant appealed to the Circuit Court upon the grounds set out in the "Case," and that appeal was heard by his honor, Judge Kershaw, who, after stating that all the exceptions were waived except those "which raise the question, whether there was sufficient evidence before the Probate Court to make out a *prima facie* case of seizin in demandant's husband during coverture, so as to require respondent to introduce his evidence in defence, if he has any," held that the testimony was sufficient to establish such a *prima facie* case as would, unless rebutted, entitle the demandant to dower. He, therefore, rendered judgment, reversing the decree of the judge of probate, and remanding the case to the Court of Probate, "in order that respondent may introduce his evidence in defence, if he have any, and for such other proceedings as may be proper."

From that judgment the defendant appeals to this court upon the grounds set out in the record, which, however, make the single question, whether the Circuit Judge erred in holding that the testimony adduced by the demandant was sufficient to make out such a *prima facie* case of seizin in the husband during coverture, as would, if not rebutted, entitle the demandant to dower.

During the argument here, an inquiry was suggested by one of the members of the court, as to whether the judgment of Judge Kershaw was appealable, inasmuch as it remanded the case for a further hearing by the Court of Probate, and this was argued by counsel. The decree of the judge of probate practically amounted to a non-suit for want of any evidence to establish one of the material issues in the case, so that the appeal from the judgment of Judge Kershaw, reversing the decree of the judge of probate, in effect presents the question, whether the judge of probate erred in granting the non-suit—if that expression can be applied to a proceeding in the Court of Probate. In this view, we cannot say that the judgment of Judge Kershaw is not appealable, though we are inclined to think that, with a view to avoid multiplicity of appeals and consequent delay and expense, the better practice

would have been simply to have noted an exception to the judgment of Judge Kershaw, which could have been heard on an appeal after a final judgment had been reached. if such judgment had been adverse to appellant. That practice seems to have been adopted in the case of *Stark* v. *Watson* (24 S. C., 215), though this court was not called upon then to make any ruling upon the subject. That practice is recommended by the fact, that if, upon the rehearing of the case by the Court of Probate, as directed by Judge Kershaw, the judgment should still be favorable to the present appellant, then this appeal would be unnecessary; but if, on the other hand, it should be unfavorable, the question presented by this appeal could still be considered, as was done in *Stark* v. *Watson.* But holding, as we do, that the judgment of Judge Kershaw is appealable, as it in effect presents the question, whether the appellant was entitled to retain a judgment of non-suit practically, we will proceed to consider the question presented by this appeal.

There being no dispute as to the law applicable to the case, the only question presented is whether the Circuit Judge erred in holding that the testimony adduced by the demandant was sufficient to make such a *prima facie* case of seizin in demandant's husband during the coverture as would, unless rebutted, entitle her to dower. The testimony is all set out in the "Case," and is too long to be incorporated here, though it should accompany the report of the case. The demandant was examined by commission, and in answer to the direct interrogatories, she testifies distinctly that her husband owned the lot of land, out of which dower is claimed, during the coverture; that he was in possession of the lot during coverture, claiming it as his own, and that he sold it to Mr. Black. It also appears from the testimony, that the lot of land was devised by Col. Thomas Taylor "to the children of my niece, Sarah Stark," and although it is stated in the testimony that the maiden name of the mother of demandant's husband was Mary S. Hay, yet we cannot doubt, from the testimony, especially that of Mr. Alexander R. Taylor, who says that none of the other nieces of testator married a Stark except one named Grace, that the person mentioned in the will as Sarah Stark was the mother of demandant's husband. It is true that this testi-

.mony would not be sufficient to establish a legal title in demandant's husband, even to an undivided portion of the lot, inasmuch as there is no evidence that the testator had title, yet it is a circumstance throwing some light on the question of possession, for the demandant also testified that her husband bought out the interests of the other children of his mother. If this testimony stood alone, we do not think there could be a doubt that the evidence was sufficient to establish a *prima facie* case of seizin in the husband, inferred from his possession, which was distinctly testified to without any qualification.

It is contended, however, that this testimony of demandant, as to her husband's possession, is deprived of all force and effect by her answers to the cross interrogatories. On her cross-examination, she does say that her husband never lived on the lot, as it had no house on it; that he never had a tenant on the lot; that he never cultivated it; and that he never enclosed said lot with a fence. This contention can only be sustained by the assumption, that the only way in which a person can have such a possession of a lot of land as would imply seizin, is either by living on it, having tenants on the lot, cultivating it, or enclosing it with a fence; for the witness was not asked whether her husband had ever exercised any other act of ownership over the lot. We do not think that such an assumption is well founded. It is possible that possession may be evidenced by other acts of ownership than those above specified. It seems that the lot was woodland, not in a condition for cultivation or for a residence, and though a fence might have been erected around the lot, yet that was not the only way in which a party could take possession. Even in a case of trespass to try titles, where the evidence of possession is of a much stricter character than in a case of dower, it has been held that marking off a tract of land with a line of stakes might be sufficient (*Allen* v. *Johnson*, 2 McMull., 495), or using it for pasture (*Porter* v. *Kennedy*, 1 *Id.*, 354); or there may be other modes of evidencing possession. At all events, the positive testimony, that the husband had possession of the lot during the coverture, which he retained until he sold it to Black, is not destroyed by the further testimony, that such possession was not evidenced by either of the modes above specified.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and the case remanded to the Court of Probate for such further proceedings as may be necessary.